**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ROBERTO CRUZ-MARTINEZ and DAMARIS FUENTES-RODRIGUEZ, on behalf of their minor daughter, ADRIANA CRUZ FUENTES<br><br>        Plaintiff,<br><br>             v.<br><br>HOSPITAL HERMANOS MELENDEZ, INC. et als.<br><br>        Defendants. | CIV. NO. 05-1328 (PG) |

**OPINION AND ORDER**

In the instant diversity suit, plaintiff Adriana Cruz-Fuentes (hereinafter "Adriana" or "Plaintiff"), a minor herein represented by her mother and father, Damaris Fuentes-Rodriguez ("Mrs. Fuentes") and Roberto Cruz-Martinez ("Mr. Cruz"), respectively, is suing Hospital Hermanos Meléndez, Inc. (hereinafter "HHMI" or "the Hospital") and Dr. José J. Mimoso (hereinafter "Dr. Mimoso"), among others, alleging that co-defendants should be held responsible for Adriana's neurological defects. According to Plaintiff, Defendants departed from the standards of care in the medical treatment provided to Plaintiff and her mother at the time of her birth and thereafter. *See Docket No. 1*.

Before the Court is HHMI's Motion for Summary Judgment, Plaintiff's Opposition, and HHMI's Reply (Docket Nos. 37, 53, 65). Also before the Court is Dr. Mimoso's Motion for Summary Judgment, Plaintiff's opposition, and Dr. Mimoso's Reply thereto (Docket Nos. 42, 49, 63).

After close examination of the record and the applicable statutory and case law, the Court DENIES HHMI's and Dr. Mimoso's motions for summary judgment, for the reasons explained below.

CIV. NO. 05-1328 (PG)                                                    Page 2

## I.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.2000). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. *See* Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id*.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Cruz and Mrs. Fuentes filed the instant claim as parents and legal representatives of their minor daughter, Adriana Cruz-Fuentes. In the

complaint, they allege that treating physician, Dr. Mimoso, and the caring hospital, HHMI, breached their duty under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. §§ 5141-5142, to provide medical care and treatment in compliance with the applicable standards of the medical profession. Federal jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332.[1] *See Docket No. 1*. Co-defendants Dr. Mimoso and HHMI answered the Complaint and denied all responsibility for the damages alleged by Plaintiff. *See Docket Nos. 8 and 12*.

It is uncontested that on April 25, 1987, at approximately 8:02 p.m., Mrs. Fuentes was admitted to HHMI in Bayamón, Puerto Rico, where she eventually gave birth to her daughter, Adriana. At around 8:20 p.m., the nurse recorded that the fetal heart rate was "weak" and "irregular" at 110-119 beats per minute. Said symptoms are consonant with fetal bradycardia. The nurse positioned Mrs. Fuentes on her left side and applied oxygen to the mother through a nasal catheter. It also stems from Mrs. Fuentes' Hospital record that, at approximately 8:30 p.m., a nurse notified Dr. Mimoso of Mrs. Fuentes arrival to the Hospital. Dr. Mimoso was Mrs. Cruz's gynecologist and obstetrician for that pregnancy. Nevertheless, the contents of the nurse's conversation with Dr. Mimoso regarding the specific elements of Mrs. Fuentes' condition remain uncertain. *See Damaris Fuentes' Medical Record at HHMI, Exhibit IV, Docket No. 37*.

Adriana was born that same night, at approximately 9:33 p.m., by spontaneous vaginal delivery. The delivery of Plaintiff Adriana was solely attended by co-defendant Dr. Mimoso and the Hospital's nursing staff. The Hospital record reflects that Adriana was born with one loop of the umbilical cord around her neck and that meconium was present at birth. At 10:30 p.m.,

---

[1] Co-defendant Dr. Mimoso has challenged this Court's jurisdiction under 28 U.S.C. § 1332 claiming that at the time the complaint was filed, Plaintiff and her parents and legal representatives were not residents of the state of Florida. *See Docket No. 38*. Dr. Mimoso's request for a jurisdictional hearing was granted and the same was held on January 24, 2007. The Court ruled from the bench denying said motion. An Opinion and Order will follow.

CIV. NO. 05-1328 (PG)                                                      Page 4

the nurses called Dr. John Jiménez ("Dr. Jiménez") to notify him of Adriana's admission and condition. Dr. Jiménez was selected by Adriana's parents as her pediatrician as he was also the pediatrician for Adriana's older siblings. According to HHMI, neither Dr. Jiménez or Dr. Mimoso were employees of the Hospital; they merely held medical privileges granted by the Hospital.

Adriana's medical record at the Hospital reflects that she had an uneventful nursery course until thirty-five (35) hours after birth when she developed cyanosis in the mouth area while being fed. Dr. Jiménez immediately examined Adriana and she was found in excellent condition with a negative physical examination. A chest x-ray was reported as possible Aspiration Pneumonia. Adriana was placed in an incubator with oxygen, intravenous fluids and antibiotics. Afterwards, Adriana continued well, active, breathing normally, with good reflexes, crying, gasping and tolerating her feedings well.

On April 28, 1987, at about sixty (60) hours after Adriana's birth, she developed focal right seizures. Dr. Jiménez immediately placed her on anticonvulsant therapy and consulted a pediatric neurologist at the Hospital, Dr. A. Hernández Colón ("Dr. Hernández"). Dr. Jiménez ordered the nurses to administer a particular dose of anticonvulsant drug Luminal every certain number of hours. It is undisputed that his orders were followed by the Hospital's nursing staff. Dr. Hernández answered the consultation that same day and recommended an extra dose of Luminal as well as a particular maintenance dose of the same medication. Dr. Hernández also recommended the administration of an additional prescription drug, Dilantin, if the seizures were not controlled and were generalized. The pediatric neurologist also requested Dr. Jiménez notify him of any complications, however, he was not consulted again by Adriana's pediatrician. As per the Hospital's records from April 28 until May 12, 1987, Dr. Jiménez then ordered the Hospital's nurses to administer particular doses of Phenobarbital and Dilantin. Parties agree

CIV. NO. 05-1328 (PG)                                                    Page 5

that all of the medication orders indicated by Dr. Jiménez were fully followed by the Hospital's nursing staff. On May 12, 1987, Dr. Jiménez discharged Adriana from the Hospital and issued the following additional orders:(a) Luminal 9 mg every twelve hours, orally; (b) Dilantin 25 mg daily, orally; and (c) follow up in one week. Adriana was discharged from HHMI on May 12, 1987, and readmitted on May 17 due to seizures.

On March 22, 2005, Plaintiff's parents and legal representatives filed the instant claim on her behalf alleging that Adriana's medical conditions are the result of the injuries she sustained at birth, which were caused by co-defendants' negligence, and/or by the negligence of others for whom co-defendants are responsible, all of whom departed from the medical standards of care and otherwise failed to act in a prudent, reasonable or responsible manner in the medical care provided to Plaintiff and her mother. *See Docket No. 1, ¶ 16*. At the time the complaint was filed, Adriana was about to turn eighteen (18) years old.

HHMI filed a request for summary judgment stating, in essence, that plaintiffs cannot make a showing of a malpractice claim against the Hospital. HHMI argues Plaintiff cannot hold it liable for the medical negligence allegedly incurred by Dr. Mimoso and other physicians not joined to the case as co-defendants. HHMI also asserts that it complied with the obligation to protect the health of its patients, and that its personnel did not deviate from the applicable standards of care. *See Docket No. 37*.

Plaintiff Adriana and her parents and legal representatives oppose HHMI's dispositive motion asserting that their expert witnesses support their theory of the case with regards to HHMI's departure from the medical standard of care, and that the disagreement between their experts and HHMI precludes entry of summary judgment. *See Docket No. 53*. HHMI riposted asserting Plaintiff failed to advance any evidence of the required elements to establish a hospital's liability according to Puerto Rico case law. *See Docket No. 65*.

Dr. Mimoso, in turn, purports that summary judgment should be entered in its favor on the grounds that Plaintiff's only claim is precluded by Puerto Rico's one-year statute of limitations, and that even if it were not, her parents and legal representatives are guilty of laches. Dr. Mimoso also argues that the extraordinary and unreasonable delay in asserting the present claim and the prejudice it causes violates his right to Due Process of law under the Fifth Amendment. Plaintiff's opposition sustains that her claim for medical malpractice is not precluded by the one-year statute of limitations because, when this action was filed, Adriana was less than eighteen (18) years old, and the statute of limitations does not run against minors. Additionally, Plaintiff also sustains that laches is a doctrine developed by the courts of equity for cases where there was no statute of limitations imposed by law. However, said doctrine does not apply to the present claim which has a clear statute of limitations, and thus, her action in the present claim was timely filed, contrary to Dr. Mimoso's allegations.

**III. ANALYSIS**

### A. HHMI's Motion for Summary Judgment

In this diversity suit, the substantive law of Puerto Rico controls. The statute that governs the liability of a physician in a medical malpractice suit is Article 1802 of the Puerto Rico Civil Code. *See* P.R. Laws Ann. tit., 31 § 5141; *see also* Vda. De López v. ELA, 104 P.R. Dec. 178, 183 (1975). In the required analysis, the court examines the Puerto Rico Civil Code, which states, "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. "Under this proviso, three elements comprise a *prima facie* case of medical malpractice." Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 189 (1st Cir.1997). Following that line, thus, in order to prevail on a medical malpractice claim under Puerto Rico law, "a party must establish (1) the duty owed; (2) an act or omission transgressing that duty;

CIV. NO. 05-1328 (PG)                                                  Page 7

and (3) a sufficient causal nexus between the breach and the harm." <u>Marcano Rivera v. Turabo Medical Center Partnership</u>, 415 F.3d 162, 167 (1st Cir.2005); *see also* <u>Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.</u>, 394 F.3d 40, 43 (1st Cir.2005); <u>Cortes-Irizarry v. Corporacion Insular De Seguros</u>, 111 F.3d at 189; <u>Lama v. Borras</u>, 16 F.3d 473, 478 (1st Cir.1994); <u>Rolon-Alvarado v. Municipality of San Juan</u>, 1 F.3d 74, 77 (1st Cir.1993); <u>Torres Nieves v. Hospital Metropolitano</u>, 998 F.Supp. 127, 136 (D.P.R. 1998).

The duty owed to a patient has been explained by the Puerto Rico courts as "[t]hat (level of care) which, recognizing the modern means of communication and education, … meets the professional requirements generally acknowledged by the medical profession." <u>Marcano Rivera</u>, 415 F.3d at 167-68 (citing <u>Lama v. Borras</u>, 16 F.3d 473 at 478 (quoting <u>Oliveros v. Abreu</u>, 101 P.R. Dec. 209, 226 (1973)). This standard is considered national and must be proven through expert testimony. To establish the act or omission transgressing the duty owed, Plaintiff must bring forth proof that "the medical personnel failed to follow these basic norms in the treatment of the patient." <u>Lama v. Borras</u>, 16 F.3d 473 at 478.

With regards to the third requirement, causation cannot be found based on mere speculation and conjecture. Expert testimony, consequently, is generally essential in order to clarify complex medical issues that are more prevalent in medical malpractice cases than in standard negligence cases. *See* <u>Marcano Rivera</u>, 415 F.3d at 168; *see also* <u>Rojas-Ithier</u>, 394 F.3d at 43. Hence, a plaintiff must establish, by a preponderance of the evidence, that the defendants' negligent conduct was the factor that most probably caused the harm suffered by plaintiff. *Id*.

With regard to a hospital's liability towards its patients, it is a firmly established doctrine by the highest court of Puerto Rico that said institutions owe their patients that degree of care that would be exercised by a reasonable and prudent man in the same conditions and circumstances. *See*

CIV. NO. 05-1328 (PG)                                                    Page 8

Marquez Vega v. Martínez Rosado, 116 P.R. Dec. 397, 404-405 (1985) (internal quotations omitted). Puerto Rico courts have held a hospital liable to its patients for malpractice "on account of a negligent act on the part of the institution's employees; consequently, the hospital's liability has been predicated on the vicarious liability doctrine." Marquez Vega, 116 P.R. Dec. at 405. The statutory source of the vicarious liability doctrine is Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5142, which states in relevant part that:

> The obligation imposed by § 5142 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible … Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties.

When a patient goes directly to a hospital for medical treatment and the hospital "provides" the physicians that treat him/her, the Supreme Court of Puerto Rico has established that the hospital and the physician are jointly liable for any act of malpractice. *See* Marquez Vega, 116 P.R. Dec. at 406-407. However, a special situation arises in cases where a physician is not employed by the hospital, but is granted the privilege of using the hospital's facilities for his/her private patients. When a patient goes directly to a physician's private office, agrees with him/her as to the treatment he or she is going to receive, and goes to a given hospital on the physician's recommendation merely because said institution is one of several which the physician has the privilege of using, the hospital should not be held liable for the exclusive negligence of an unsalaried physician, who was first and foremost entrusted with the patient's health. *Id.,* at 408-409. Notwithstanding the above, even in these types of situations, the hospital has the continuous obligation to protect the health of its patients by: (a) carefully selecting the physicians who, for some reason or another, are granted the privilege of

CIV. NO. 05-1328 (PG)                                                          Page 9

using its facilities; (b) requiring that said physicians keep up-to-date through professional advancement studies; (c) monitoring the labor of said physicians and taking action, when possible, in the face of an obvious act of malpractice; (d) discontinuing the privilege granted in the face of the repeated or crass acts of malpractice on the part of one of those physicians; and (e) keeping reasonably up-to-date on current technological breakthroughs. *Id.*, at 409-410 (internal quotations omitted).

In its motion for summary judgment, HHMI sustains that, according to Puerto Rico's malpractice law, Plaintiff cannot make a showing of a malpractice claim against it because HHMI cannot be held liable for the medical negligence allegedly incurred by Dr. Mimoso and other physicians who are not employees of the Hospital, but merely hold privileges to use its facilities for the benefit of their private patients. HHMI also argues that it complied with the obligation to protect the health of its patients and that its personnel did not deviate from the applicable standards of care.

According to Plaintiff's expert witness, Dr. Bernard Nathanson, HHMI's nursing staff breached the medical standard of care by: (a) not informing Dr. Mimoso of the presence of meconium in the amniotic fluid; (b) not administering a bolus of fluid during the fetal bradycardia episode; and (c) not summoning a pediatrician into the delivery room at the time of birth. *See Excerpts of Deposition taken to Dr. Bernard Nathanson, Exhibit V, Docket No. 37*. In his opinion letter, Dr. Nathanson also noted that there were discrepancies in Adriana's record with regards to her Apgar score[2]. *See Dr. Nathanson's opinion letters, Exhibit III, Docket No. 53*.

---

[2] "Apgar scores are useful for describing the status of the infant at birth and his or her subsequent adaptation to the extrauterine environment. … If a low Apgar score is anticipated or assigned, rapid assessment of the neonate's condition is necessary to delineate a plan of care." *See Guidelines for Perinatal Care by the American Academy of Pediatrics and The American College of Obstetricians and Gynecologists, page 116, Exhibit VII, Docket No. 37.*

CIV. NO. 05-1328 (PG)                                                  Page 10

The second expert witness hired by Plaintiff, Dr. Allan Hausknecht, understands that Adriana's cerebral palsy was mainly caused by alleged departures from the standard of care at the time of delivery. Dr. Hausknecht also finds that the inadequate anticonvulsant levels caused further damage to Adriana. As to the anticonvulsant levels, Dr. Hausknecht testified that, based on his 35 to 40 years career, "the neurologist [Dr. Hernández] miserably failed" in aiding the pediatrician, Dr. Jiménez, in the treatment of the seizures. Dr. Hausknecht also stated that the Hospital should be held responsible for having "credentialed these people to work there and putting out to the public that these people are competent to work there and perform the services they are supposed to perform." *See Excerpts of Deposition taken to Dr. Allan Hausknecht, Exhibit XXI, Docket No. 37*. When asked if he thought the recordkeeping was part of the negligence in this case, Dr. Hausknecht answered in the affirmative. *See Excerpts of Deposition taken to Dr. Allan Hausknecht, Exhibit VII, Docket No. 53*.

Co-defendant HHMI argues in its motion for summary judgment that because Mrs. Fuentes' Hospital record states that Dr. Mimoso was notified to his home about patient's condition and admission, this Court must conclude that the nurse particularly informed Dr. Mimoso of the presence of meconium in Mrs. Fuentes' amniotic fluid. However, as previously mentioned, the record is devoid of the specific content of the nurse's conversation with Dr. Mimoso when he was notified of Mrs. Fuentes arrival to the Hospital. Thus, there are issues of fact as to whether or not the Hospital's staff deviated from the standard of care by not specifically notifying Dr. Mimoso of the presence of meconium in Mrs. Fuentes' amniotic fluid.

HHMI also induces this Court to conclude that nurses **in Puerto Rico** are not allowed to administer intravenous fluids to a pregnant woman, such as a bolus of fluid during a fetal bradycardia episode, without a physician's order. Therefore, because Dr. Mimoso did not order it, the Hospital is not

CIV. NO. 05-1328 (PG)                                               Page 11

liable for Dr. Mimoso's omission because he is not an employee of the Hospital. *See Docket No. 37, page 13 (emphasis ours)*. HHMI's grounds for its assertion is a statement under penalty of perjury signed by Norma Ortiz Colón, Medical Director of Hospital Hermanos Meléndez, that *actually* states that "[t]he nursing staff **of HHMI** cannot administer intravenous fluids without a physician's order as to that effect." *See ¶21 of Exhibit III, Docket No. 37 (emphasis ours)*. Co-defendant also bases its assertion on an incomplete citation of James, Steer, Weiner and Gonik, High Risk Pregnancy: Management Options, 2nd Ed., W.B.Saunders, 1999, that, according to co-defendant HHMI, contradicts Dr. Nathanson's opinion and assessment by not establishing that the administration of a bolus of fluids in the presence of bradycardia is part of the standard of care in those situations. *See Docket No. 37, page 14.* No more need be said. Plaintiff's experts' assertions and HHMI's are clearly juxtaposed, and the net result is a factual issue as to what is the applicable standard of care and whether or not the Hospital and its employees breached it.

To decide whether summary judgment is warranted would require that the Court weigh the evidence and decide who is more credible, Plaintiff or co-defendant HHMI. This the Court cannot do as issues of deviations from the medical standard of care are questions of fact that must be decided by the jury. Plaintiff's evidence "establishes factual disagreements as to which reasonable minds may differ. No more is exigible … Right or wrong, the plaintiff is entitled to present her case to a jury." *See* Cortes-Irizarry, 111 F.3d at 189 (1st Cir.1997)(internal quotations omitted). Quite simply, the controversies as to the facts mentioned above preclude any such finding, and thus, HHMI's motion for summary judgment is hereby DENIED.

### B. Dr. Mimoso's Motion for Summary Judgment

In his motion for summary judgment, Dr. Mimoso requests this case be dismissed on the grounds that this claim is precluded by Puerto Rico's one-

CIV. NO. 05-1328 (PG)                                                  Page 12

year statute of limitations, and that even if it were not, her parents and legal representatives are guilty of laches. Dr. Mimoso also argues that the extraordinary and unreasonable delay in asserting the present claim and the prejudice it causes violates his right to Due Process of law under the Fifth Amendment.

Puerto Rico's one-year statute of limitations for tort actions starts to run from the time the aggrieved person had knowledge thereof of the damage. *See P.R. Laws Ann. tit. 31, § 5298*. Under Puerto Rico law, the statute of limitations for a tort action brought by a minor plaintiff is tolled until the plaintiff becomes twenty-one years old. *See P.R. Laws Ann. tit. 32, § 254(1)*. Plaintiff Adriana's parents and legal representatives filed her medical malpractice claim against Defendants before she turned eighteen years old, and thus, it is not untimely.

Contrary to Dr. Mimoso's allegations, the laches doctrine does not apply to the present case. The Supreme Court of Puerto Rico has repeatedly held that the laches doctrine does not apply where, as here, the cause of action has a specific prescriptive period. *See* J.R.T. v. P.R. Telephone Co., 107 P.R. Dec 76 (1978); Saavedra v. Central Coloso, 85 P.R. Dec. 421, 423 (1962) (internal quotations omitted).

Co-defendant Dr. Mimoso's arguments are thus without merit.

**IV.   CONCLUSION**

For the foregoing reasons, this Court hereby **DENIES** co-defendant HHMI's motion for summary judgment (Docket No. 37) and co-defendant Dr. Mimoso's motion for summary judgment (Docket No. 42).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, January 24, 2007.

                                             S/ JUAN M. PEREZ-GIMENEZ
                                             JUAN M. PEREZ-GIMENEZ
                                             U.S. DISTRICT JUDGE